[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 08, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11768
Non-Argument Calendar

_____

D. C. Docket No. 04-00557-CV-FTM-33-SPC

CAROLE VUXTA,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 8, 2006)**

Before ANDERSON, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Carole Vuxta appeals the district court's order affirming the Social Security Commissioner's denial of her application for supplemental security income benefits, 42 U.S.C. § 1383(c)(3). For the reasons that follow, we vacate and remand.

The scope of our review in a social security appeal is to determine whether the Administrative Law Judge (ALJ) applied the correct law and whether the findings of fact are supported by substantial evidence. *Martin v. Sullivan*, 894 F.2d 1520, 1529-30 (11th Cir. 1990). "Substantial evidence . . . is more than a scintilla, but less than a preponderance: it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted).

Vuxta first argues the ALJ improperly discredited the opinions of treating psychologist Dr. Miller and state agency psychologists Dr. Ginn and Dr. VanderPlate in determining she had only mild social functioning limitations. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (quotation omitted). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. When electing

to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* Under 20 C.F.R. § 404.1527(f)(2), the ALJ must consider non-examining state psychologists' opinions and, when the ALJ does not give controlling weight to a treating physician, must explain the weight given to their opinions. Failure to explain the weight given to different medical opinions is reversible error. *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

The ALJ had good cause to discredit the opinion of Vuxta's treating psychologist, Dr. Miles, and articulated its reasons for doing so. As the ALJ found, Dr. Miles' assessment of Vuxta was inconsistent with his own medical records. His initial assessment that Vuxta was extremely limited in her ability to maintain social functioning was made after he had only seen her twice, at a time when he assigned her a Global Assessment of Functioning (GAF) score indicating a serious impairment in social functioning. However, his later medical records indicate significant improvement with treatment: Vuxta responded well to treatment, became calmer and less anxious, was no longer considered a suicide risk, and her GAF score improved enough to reduce her impairment level from serious to moderate. These later improvements are inconsistent with Dr. Miles' prior assessment that Vuxta was extremely limited in social functioning.

Furthermore, Dr. Meck was the only medical expert whose records reflect a test determining the veracity of Vuxta's subjective reports of psychological symptoms. Vuxta's results on the Computerized Assessment of Response Bias (CARB), which tests for symptom exaggeration and malingering, were "very far below that expected from either normal controls or persons with verified brain damage," and indicated such a result was "extremely unlikely" in the absence of symptom exaggeration or malingering. As the ALJ found, Dr. Meck's assessment that Vuxta engaged in symptom exaggeration or malingering is inconsistent with Dr. Miles' assessment that she was extremely limited in social functioning. Substantial evidence thus supports the ALJ's decision to discredit Dr. Miles' assessment, and the ALJ articulated its reasons for doing so.

Since the ALJ did not give controlling weight to the opinion of a treating physician, it was required to explain the weight given to the opinions of the non-examining state psychologists, Dr. Ginn and Dr. VanderPlate. *See* 20 C.F.R. § 404.1527(f)(2)(ii). The ALJ considered Dr. Ginn's opinion and explained its reasons for discrediting the opinion with respect to Vuxta's social functioning limitation. Dr. VanderPlate's assessment, however, was not mentioned in the ALJ's decision. As the ALJ did not mention Dr. VanderPlate at all, it did not explain the weight it was giving to his opinion. Accordingly, we remand to the

4

Commissioner in order for the ALJ to explain its consideration of Dr. VanderPlate's opinion.

Vuxta next argues the ALJ produced an internally inconsistent opinion by finding she was limited to "simple and repetitive" work in the body of the opinion, but limiting her only to "unskilled" work in its residual functional capacity (RFC) assessment. Vuxta contends the ALJ was required to find whether the restriction to simple, repetitive work impacts her ability to perform a wide range of jobs at the light, unskilled level. She further argues the ALJ erroneously relied exclusively on the medical-vocational guidelines (grids) in determining there were jobs available in the national economy she could perform.

An ALJ must follow a five-step process in making a social security disability determination. *Preston v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of proof for the first four steps: (1) whether she is currently performing a substantial gainful activity; (2) whether she has a severe impairment; (3) whether that severe impairment meets or exceeds an impairment in the listings; and (4) whether she can perform her past relevant work. *Id*. at 1237-39. Only at the fifth step does the burden shift to the Commissioner, who must show there are a significant number of jobs in the national economy the claimant can perform. *Id*. In order to perform the fourth and fifth steps, the ALJ

5

must determine the claimant's RFC. *Id.* at 1238-39. RFC is what the claimant is still able to due despite her impairments, and is based on all relevant medical and other evidence. *Id.* RFCs can contain both exertional and nonexertional limitations. *Id.* at 1242-43. These limitations generally include a restriction to a particular physical exertion level, such as light, medium, or heavy, and a particular skill level, such as unskilled or semi-skilled. 20 C.F.R. §§ 404.1567-68. Each level is defined by regulation. *See id.*

At the fifth step, the ALJ uses the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Preston*, 357 F.3d at 1239. In order to do this, the ALJ can either use the grids or call a vocational expert (VE). *Id.* at 1239-40. In using the grids, the ALJ inputs the claimant's physical exertion level, skill level, age, education, and experience into a matrix, which establishes whether the claimant is disabled. *See id.* "[E]xclusive reliance on the grids is not appropriate *either* when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Id.* at 1242 (quotation omitted). "This Court has interpreted 'significantly limit basic work skills' as limitations that prohibit a claimant from performing 'a *wide* range' of work at a given work level." *Id.* at 1243. "The ALJ

6

must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (quotation omitted).

Here, the ALJ determined Vuxta's exertional RFC was for light work, and her nonexertional RFC was for unskilled work. Using her RFC, age, education, and work experience, the ALJ applied the grids to determine she was not disabled. Vuxta takes issue with the ALJ's determination of her nonexertional RFC, and the subsequent application of the grids based on the unskilled classification. The ALJ found Vuxta "remained capable of performing simple repetitive tasks in a competitive work environment." Vuxta contends this forms two additional nonexertional limitations—that Vuxta can only perform simple tasks, and that she can only perform repetitive tasks.[1]

A limitation to simple tasks required no additional treatment from the ALJ because "[u]nskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Therefore, a limitation to simple tasks is already contained within

---

[1] The government suggests a plausible reading of the ALJ's opinion that would, based on the ALJ's intention, effectively subsume the term "repetitive" within the term "simple." While we decline to decide whether the ALJ did not mean exactly what it wrote, the ALJ may wish to clarify this point on remand.

the unskilled limitation, and is not a limitation above and beyond that classification. A limitation to repetitive tasks, however, is not contained within the definition of unskilled. *See* 20 C.F.R. § 404.1568(a). If the ALJ determined that a limitation to repetitive tasks did not preclude Vuxta from performing a wide range of work at a given level, then a disability determination relying exclusively on the grids was appropriate. If, however, the ALJ determined that a limitation to repetitive tasks significantly limited Vuxta's basic work skills, then the ALJ was required to consult a VE. The ALJ must address and resolve this issue before relying on the grids. Accordingly, we remand to the Commissioner for the ALJ to make further determinations on this matter.

**VACATED AND REMANDED.**