Jan **CHANEY–EVERETT**, Plaintiff,

v.

Michael J. **ASTRUE, Commissioner of Social Security,** Defendant.

Case No. 11–61492–Civ.

United States District Court, S.D. Florida.

March 6, 2012.

Adam Scott Neidenberg, Esq., Fort Lauderdale, FL, for Plaintiff Jan Chaney–Everett.

Amanda A. Kessler, Esq., Assistant United States Attorney, Miami, FL, for Defendant Michael J. Astrue.

### *ORDER ACCEPTING REPORT AND RECOMMENDATION*

KATHLEEN M. WILLIAMS, District Judge.

This MATTER is before the Court on Magistrate Judge Barry S. Seltzer's Report and Recommendation [D.E. 24]. More than fourteen days have passed since Magistrate Judge Seltzer issued his Report and Recommendation, and no objections have been filed. Moreover, the Court has conducted a *de novo* review of the record and hereby **ACCEPTS** Magistrate Judge Seltzer's Report and Recommendation. Accordingly, the Plaintiff's Motion for Summary judgment [D.E. 18] is **DENIED,** and the Defendant's Motion for Summary Judgment [D.E. 19] is **GRANTED.** All pending motions are **DENIED AS MOOT,** and all hearings are **CANCELED.** The Clerk is directed to **CLOSE** this case.

DONE AND ORDERED in Chambers, in Miami, Florida, this 5th day of March, 2012.

### *REPORT AND RECOMMENDATION TO DISTRICT JUDGE*

BARRY S. SELTZER, United States Magistrate Judge.

### I. *INTRODUCTION*

THIS CAUSE is before the Court on the cross-motions for summary judgment [1]

---

**1.** Although other circuits have found the summary judgment device inappropriate for de-

ciding cases under the Social Security Act,

filed, respectively, by Plaintiff Jan Chaney–Everett ("Claimant") and by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). The motions were referred to the undersigned pursuant to 28 U.S.C. § 636 and Magistrate Rule 1(c) and (d), Local Rules of the United States District Court for the Southern District of Florida.

The cross-motions present the following issue: whether there exists substantial evidence to support the determination of the Administrative Law Judge ("ALJ") that Claimant has the residual functional capacity ("RFC") to perform unskilled light work—"light non-stress jobs" or "light level work simple and routine in nature"— and, therefore, is "not disabled" within the meaning of the Social Security Act. The undersigned concludes that substantial evidence does support the ALJ's determination. Accordingly, the undersigned RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 18) be DENIED, that Defendant's Motion for Summary Judgment (DE 19) be GRANTED, and that the Commissioner's decision be AFFIRMED.

## II. *PROCEDURAL HISTORY*

On December 30, 2008, Claimant filed applications for a period of Disability, for Disability Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI"), alleging that she became disabled as of December 23, 2008 due to Bipolar Disorder, Depression, Hypertension, and Human Immunodeficiency Virus ("HIV"). Tr. 120, 122, 160–61. The Social Security Administration denied Claimant's applications initially and upon reconsideration. Tr. 70–72, 74–76, 83–84, 86–87.

Claimant filed a timely request for hearing. On November 24, 2010, Claimant, accompanied by counsel, appeared and testified at a hearing before an ALJ. Tr. 24–41. On December 17, 2010, the ALJ issued his decision, finding that Claimant could perform unskilled light work and concluding, therefore, that Claimant is "not disabled" from December 23, 2008, through the date of the decision. Tr. 57–68. On June 1, 2011, the Appeals Council denied Claimant's request for review, leaving the ALJ's decision standing as the final decision of the Commissioner. Tr. 1–4.

On July 7, 2011, Claimant filed a Complaint in this Court seeking judicial review of the Commissioner's decision (DE 1). On October 25, 2011, the Commissioner filed an Answer, together with the administrative record (DE 14, 15). On December 22, 2011, Claimant filed Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (DE 18), and on January 23, 2012, the Commissioner filed Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgement (DE 19). On February 2, 2012, Claimant responded to Defendant's Motion (DE 21), and on February 8, 2012, the Commissioner replied thereto (DE 23).

The matter is now ripe for review.

## III. *FACTS*

The undersigned has reviewed the Statement of Facts contained within Defendant's Motion and finds that it fairly and accurately summarizes the relevant portions of the administrative record.[2]

*see, e.g., Igonia v. Califano,* 568 F.2d 1383 (D.C.Cir.1977), this Circuit has deemed it appropriate where the district court has reviewed the record and based its judgment on a finding of substantial evidence in the administrative record. *See Lovett v. Schweiker,* 667 F.2d 1 (5th Cir.1981).

**2.** The undersigned has bracketed minor corrections to Defendant's Statement of Facts.

### 1. The Relevant Time Period

The relevant period in this case begins on December 23, 2008, Plaintiff's alleged disability onset date (Tr. 156). Her date last insured was December 31, 2008 (Tr. 156).[3] Thus, to be entitled to DIB benefits, Plaintiff bears the burden of proving that she satisfied the regulatory definition of disability as of December 31, 2008. For purposes of Plaintiff's SSI application, the relevant period extends to December 17, 2010, the date of the ALJ's decision (Tr. 64). Medical records predating Plaintiff's December 23, 2008 alleged onset date are referenced for background purposes only.[4]

### 2. Vocational Factors and Daily Activities

Plaintiff was 50 years old on the date of the ALJ decision (Tr. 156, 64). She previously worked as a travel agent and sales representative (Tr. 29–30, 201). Although Plaintiff reported that she could pay attention for "not even" one minute, (Tr. 172), she admitted that she watched television "all the time" and "very well" (Tr. 171). She further reported that her impairments had "no effect" on her ability to care for her personal needs (Tr. 190).

### 3. Medical Evidence Relevant to Plaintiff's Ability to Work

Plaintiff's appeal focuses solely on whether she had non-exertional mental limitations that impacted her ability to work (Pl.'s Br. at 11–14 [DE 18]). Accordingly, the Commissioner will only address evidence related to Plaintiff's mental impairments.

Evidence related to Plaintiff's mental impairments is scant. On December 23, 2008, Plaintiff was admitted to Broward Health for suicidal ideation (Tr. 353). Plaintiff reported drinking 3–5 glasses of alcohol per day, and admitted she consumed a bottle of wine and smoked marijuana that day (Tr. 354–55, 380). Plaintiff also had a history of cocaine abuse (Tr. 307–08[,381]). Plaintiff had a depressed mood and constricted affect, but was alert and oriented, had intact memory, and an organized thought process (Tr. 354). Once Plaintiff received medication, she "began showing signs of improvement, denying suicidal ... ideation, [and] denying auditory hallucinations" (Tr. 385). By December 31, 2008, Plaintiff was noted to be "much improved" and was discharged (Tr. 385). Plaintiff did not see a mental health professional until three months after her hospital discharge. On March 24, 2009, Plaintiff visited the Florida Neuropsychiatric Institute with complaints of panic attacks and nervousness (Tr. 422). She was alert and oriented x3, but had a subdued affect and was "tense" (Tr. 422). Plaintiff was reminded to abstain from alcohol, and she was provided medication, and advised to return in one month (Tr. 422). She returned three months later on June 16, 2009, and was advised to continue her current medication regimen (Tr. 421).

In August 2009, Plaintiff tested positive for cocaine and was advised to stop using the drug (Tr. 61, 531–32).

---

**3.** Social Security's DIB program is similar to other insurance programs in that to qualify, a claimant must have coverage, *i.e.,* be fully insured, at the time of disability. 42 U.S.C. § 423(a), (c); 20 C.F.R. §§ 404.101(a), 404.131(a) (2011). The coverage period for an individual seeking DIB benefits extends to her date last insured, which is the last day when she is eligible for DIB. *Id.*

**4.** *See e.g., Carmickle v. Comm'r Social Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir.2008) ("[m]edical opinions that predate the alleged onset of disability are of limited relevance."). Furthermore, the records concern a previously adjudicated period. Plaintiff filed a prior application for benefits, which an ALJ denied on October 22, 2008 (Tr. 157). Plaintiff did not appeal that determination.

On September 9, 2009, Dr. Masters, D.O., Plaintiff's physician at Florida Neuropsychiatric, completed a "Treating Source Mental Status Report" (Tr. 485–87). Dr. Masters last saw Plaintiff on June 16, 2009, three months earlier, and saw Plaintiff only twice during the relevant period (Tr. 421–22). Even though Dr. Masters had not recently examined Plaintiff, he opined that Plaintiff could not work full-time because her "functioning is currently impaired" (Tr. 487). He did not explain any specific functional limitations (Tr. 486–87).

Dr. Masters noted that Plaintiff had relevant and coherent thought process, normal thought content with no delusions or suicidal ideation, and "somewhat impaired" concentration (Tr. 486). Plaintiff was oriented x3 and her memory was not grossly impaired (Tr. 486). On November 4, 2009, Janis Heffron, Ed.D., a state agency psychologist, reviewed the evidence and opined that Plaintiff could work (Tr. 488–90). In the "Summary Conclusion" portion of her opinion, Dr. Heffron opined that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods (Tr. 488). However, she believed that Plaintiff was not significantly limited in the remaining 19 areas of functioning (Tr. 488–89). Specifically, she believed that Plaintiff could understand, remember, and carry out simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal work-week without interruption, and perform at a consistent pace (Tr. 488–89). She ultimately concluded that although Plaintiff had problems with sustained concentration, she could nevertheless perform the mental demands of competitive work (Tr. 490). Plaintiff did not return to Dr. Masters until January 14, 2010 (Tr. 518). She reported increased depression and that she had not taken her medication (Tr. 518). Dr. Masters renewed Plaintiff's prescriptions, and at her next appointment on March 1, 2010, Plaintiff reported "doing well" (Tr. 518). Plaintiff's March 30, 2010 appointment was her last visit to Florida Neuropsychiatric before her administrative hearing (Tr. 515).

On November 9, 2010, 15 days before her administrative hearing, Samantha Bessega, M.D. completed a "Residual Functional Capacity Questionnaire" (Tr. 645). Dr. Bessega indicated that she treated Plaintiff monthly since October 2010, but the record does not contain any other evidence from Dr. Bessega (Tr. 645). Dr. Bessega checked a box to indicate that Plaintiff could sit, stand, and walk less than 2 hours in an 8 hour workday (Tr. 645). She also indicated that Plaintiff had an 80% limitation in her ability to use her fingers, and a 70 % limitation in her ability to use her hands and arms "because of poor attention/concentration" (Tr. 646). Dr. Bessega did not identify any progress notes or objective findings to support her conclusions (Tr. 645–46).

## 4. The ALJ's Decision

The ALJ found that Plaintiff had the "severe" impairments of asymptomatic HIV infection, hypertension, and depression (Tr. 59, Finding No. 3). After consideration of the entire record, the ALJ found that Plaintiff had the RFC to perform unskilled light work (Tr. 60–63, Finding No. 5). The ALJ concluded that Plaintiff could not perform her past relevant work because she "is unable to perform more than light level work simple and routine in nature." (Tr. 63, Finding No. 6). The ALJ then proceeded to step five and used the Medical–Vocational Guidelines (the "grids") as a framework to find that Plaintiff was not

disabled (Tr. 63–64, Finding Nos. 10–11).

Defendant's Motion at 3–6 (DE 19).

IV. *STANDARD OF REVIEW*[5]

In reviewing claims brought under the Social Security Act, the court's role is a limited one. The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). "Substantial evidence" is evidence that a reasonable person would accept as adequate to support the challenged conclusion. *Perales,* 402 U.S. at 401, 91 S.Ct. 1420; *Walden v. Schweiker,* 672 F.2d 835, 839 (11th Cir.1982). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Bloodsworth,* 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, the court must determine whether the ALJ properly applied the correct legal standards. *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982).

V. *ANALYSIS*

A. *The Sequential Evaluation*

A "disability" is defined as an inability

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A). In determining the merits of a claim for benefits, courts must consider the evidence as a whole, including: 1) objective medical facts or clinical findings; 2) diagnoses of examining physicians; 3) subjective evidence of pain and disability as testified to by the claimant and corroborated by other witnesses; and 4) the claimant's age, education, and work history. *Walden,* 672 F.2d at 839.

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520 and 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful employment. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment is not found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next phase of the analysis. *Id.*

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix I of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experi-

---

5. The SSI disability regulations appear in Subsection I of 20 C.F.R. Part 416, 20 C.F.R. § 416.901 *et seq.,* and are generally identical to those set forth in 20 C.F.R. Part 404, Subsection P, 20 C.F.R. § 404.1501 *et seq.,* governing Social Security disability determina-

tions. The standard of review in SSI cases is the same as the standard for Social Security disability cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing Social Security disability determinations is generally applicable to SSI cases.

ence. If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the "residual functional capacity" to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define "residual functional capacity" as "what you can still do despite your limitations." 20 C.F.R. §§ 404.1545, 416.945. This determination takes into account "all relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others. *Id.* The ALJ must then compare the residual functional capacity to the demands of the previous employment to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

■ If the claimant establishes an inability to return to past relevant work, the burden shifts to the Commissioner to demonstrate that there exists other substantial gainful employment in the national economy that the claimant can perform. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir.1987); *Smith v. Schweiker*, 646 F.2d 1075, 1077 (5th Cir. Unit A 1981). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Smith*, 646 F.2d at 1077. These shifting burdens comprise the fifth and final step, at which point the ALJ must resolve whether the claimant is actually capable of performing other gainful and substantial work within the economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

To help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Guidelines may be applied where a claimant is not performing substantial gainful activity and is prevented by a severe, medically determinable impairment from doing past relevant work. 20 C.F.R. §§ 404.1569, 416.969. The Guidelines are composed of detailed grids and rules, which, based on a claimant's residual functional capacity, age, education, and previous work experience, direct a finding of disabled or not disabled. *See Walker*, 826 F.2d at 1002.

■ Yet, the Guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of the rule." 20 C.F.R. §§ 404.1569, 416.969. The Guidelines, therefore, are generally not applicable where the claimant is unable to "perform the full range of work required of that category on a daily basis." *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Further, they may not be used when the claimant suffers from (significant) non-exertional limitations, such as (significant) mental impairments. *Id.; Walker*, 826 F.2d at 1003. When the Guidelines may not be conclusively applied, they may serve only as a framework to determine whether sufficient jobs exist within the claimant's range of residual functional capacity. *Hargis*, 945 F.2d at 1490. In such instances, the Commissioner will often carry his burden through the use of a vocational expert. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989); *Walker*, 826 F.2d at 1003. A vocational expert provides the ALJ with a realistic appraisal of the work a claimant is capable of performing. *Bowen*, 889 F.2d at 50.

B. *Application of the Sequential Evaluation by the ALJ*

After considering all the evidence, the ALJ found that Claimant retains the RFC

to perform unskilled light work—"light non-stress jobs" or "light level work simple and routine in nature"—and then (utilizing the Guidelines as a framework for his decision) concluded that she is "not disabled" within the meaning of the Social Security Act. Tr. 60–64.

In arriving at this conclusion, the ALJ addressed each step in the evaluative sequence. He first observed that Claimant has not engaged in substantial gainful activity since December 23, 2008, the date of her alleged onset of disability. Tr. 59. The ALJ next found that Claimant suffers from the following "severe" impairments: "asymptomatic HIV infection, hypertension and depression." Tr. 59. Additionally, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Tr. 59. More specifically, he found that Claimant's mental impairment does not meet or medically equal the criteria of listings 12.04 and 12.06 because she does not have any of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended dura-

tion. To the contrary, the ALJ found: in activities of daily living, Claimant has no restriction; in maintaining social functioning, Claimant has only mild difficulties, as she reported some problems getting along with the daughter with whom she lives; in maintaining concentration, persistence, or pace, Claimant has only moderate difficulties, as she reported some problems with concentration but memory was not grossly impaired; and as for episodes of decompensation, Claimant has not experienced any episodes that have been of extended duration. Tr. 60.

The ALJ then assessed Claimant's RFC. As part of this assessment, the ALJ considered all the evidence, including Claimant's subjective complaints; however, the ALJ found that Claimant's subjective complaints are "not credible". Tr. 62. More specifically, the ALJ found that Claimant's "responses were vague and not believable and her answers were tailored to show disabilities." [6] Tr. 63. After considering the entire record, including medical evidence, the ALJ noted that his RFC "assessment reflects the degree of limitation [he] has found in the 'paragraph B' mental functional analysis." The ALJ then determined that Claimant has the RFC to perform unskilled light work, more specifically, "light non-stress jobs" or "light level work simple and routine in nature." Tr. 60, 63.[7]

---

**6.** The undersigned notes that Claimant had previously applied for Social Security benefits but that an ALJ denied her application two years earlier. Tr. 157.

**7.** Social Security Ruling 83–10 defines "light work":

Light work. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs. A job is also in this category when it involves

sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which requires greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

"Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday. Sitting may occur intermittently during the

After determining Claimant's RFC, the ALJ observed that Claimant had past relevant work as a travel agent/chamber of commerce employee, in which positions she was required to lift up to heavy weight, write and complete more than simple reports, and use machines or tools. Tr. 63. Because Claimant is now "unable to perform more than light level work simple and routine in nature," the ALJ found that she is unable to return to her past relevant work. Tr. 63.

Finally, the ALJ sought to determine whether there exist jobs in significant numbers in the national economy that Claimant can perform. He considered that Claimant was a "younger individual" as of the disability onset date, who subsequently changed categories to "closely approaching advanced age". Tr. 63. He further considered that Claimant has a limited education and is able to communicate in English. Tr. 63. Transferability of job skills, however, was not an issue, as the Guidelines would support the same finding whether or not Claimant had transferable job skills. Tr. 63. On these facts, were Claimant able to perform the full range of light work, Medical–Vocational Rule 202.18 and Rule 202.11 would direct a finding of "not disabled." Tr. 64. The ALJ then observed that because Claimant's "additional limitations have little or no effect on the occupational base of unskilled light work," "[a] finding of 'not disabled' is therefore appropriate under the framework of these rules." Tr. 64. The ALJ, therefore, concluded that Claimant "has not been under a disability, as defined in the Social Security Act, from December 23, 2008, through the date of this decision" and is not entitled to either DIB or SSI benefits. Tr. 64.

### C. *Discussion*

Claimant disputes the findings and conclusions of the ALJ. First, Claimant argues that the ALJ "did not consider that [depression] had an effect upon [C]laimant's ability to work." Plaintiff's Motion at 11 (DE 18). More specifically, Claimant faults the ALJ for failing to "give deference to the opinions of [C]laimant's *treating psychiatrists*" and for failing to "include a single psychiatric concession in the RFC" despite the "moderate limitations assessed by all the psychiatric providers." *Id.* (emphasis added). And second, Claimant argues that the ALJ should not have relied solely upon the Guidelines, but should have secured the testimony of a vocational expert ("VE") given her non-exertional mental impairment. *See* Plaintiff's Motion at 14 (DE 18); Plaintiff's Response at 3 (DE 21). The undersigned, however, does not find either argument persuasive.

### 1. *ALJ's Consideration of Claimant's Mental Impairment*

The undersigned finds that the ALJ fully considered Claimant's mental impairment and accounted for it in the RFC assessment. He acknowledged that Claimant's depression was "severe," and he thoroughly discussed her mental health treatment and diagnoses in his Decision. Tr. 60–63. And on account of her mental impairment, he acknowledged that Claimant could not perform her past relevant work, as she is "unable to perform more than light level work simple and routine in

---

remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.
1983 WL 31251, at *5–6 (S.S.A.).

nature." Tr. 63. But with respect to those impairments, the ALJ specifically found that she is "not so disabled as to be unable to perform any work activity." Tr. 62. After considering the medical evidence, as well as Claimant's testimony, the ALJ explained his finding:

The medical evidence indicates that from October 2008 to March 2010, the claimant was treated at [Florida Neuropsychiatric Institute], the claimant complained of feeling nervous and depressed. However, also noted during this period were multiple instances when the claimant was noted as not taking her medications. When she did take medication she was noted as feeling better. Alcohol abuse was noted during this period and the claimant was advised to stop drinking.[8] Mental status examinations revealed thought processes that were relevant and coherent. There were no delusions or suicidal ideation present. While concentration was noted as somewhat impaired, the claimant was oriented x 3 and memory was not grossly impaired. The claimant was noted as alert and cooperative. In terms of her asymptomatic HIV+, from July 2009 to March 2010, the claimant's CD4 counts, viral load levels and weight were stable. Although the claimant complained of chest pain and headache in June 2010, upon medication her pain resolved. A CT of the brain was normal and a chest x-ray was negative. The undersigned finds that claimant is capable of light non-stress jobs. Her responses were vague and not believable and her answers were tailored to show disabilities.

Tr. 62–63. The ALJ then looked to the Guidelines as a framework for his Decision, and he found that Claimant's non-exertional (mental) limitations would "have little or no effect on the occupational base of unskilled light work." Tr. 59–64. By limiting Claimant to "unskilled light work," the ALJ properly accounted for all of her credibly established non-exertional (mental) limitations. Yet, Claimant faults the ALJ for not affording appropriate weight to the opinions of two "treating" physicians. *See* Plaintiff's Motion at 11 (DE 18).

 The Regulations do require that an ALJ give more weight to the opinion of a treating source. *See* 20 C.F.R. § 404.1527(d)(2). Indeed, the ALJ must accord a treating source opinion controlling weight where it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See id.* Similarly, the Eleventh Circuit has made clear that the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir.2004) (citation omitted). " '[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* When controlling weight is not accorded the opinion, the ALJ must consider the specialization of the physician, the length of the treatment relationship, the nature and frequency of the examinations, the evidence offered in support of the opinion, and the consistency of that opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(d). Yet, al-

---

8. The undersigned notes that Claimant had a history of cocaine abuse that continued during this period, despite the advice of health care providers that she stop. Tr. 61, 307–08, 531–32.

though the opinions of treating and examining physicians are considered when assessing a claimant's ability to work, it is the ALJ who retains the authority to make the final determination on a claimant's ability to do so. *See* 20 C.F.R. § 404.1527.

In arguing that the ALJ erred, Claimant relies on a check-box form from Dr. Bessega and a "mental status report" from Dr. Masters as evidence of additional functional limitations concerning concentration and maintaining a regular work schedule. Plaintiff's Motion at 12–13 (DE 18). Claimant, however, does not cite to any mental status examinations or objective findings to support these opinions; nor does she explain how these opinions are supported by or consistent with other evidence of record. *See id.* at 11–13. Indeed, the ALJ noted that although he considered the physicians' respective opinions, he accorded them "little weight" because "the severity [of their opinions] is not supported by the physicians' own notes or other objective medical evidence in the record (SSR 96–2p)." Tr. 63.[9]

### a. *Dr. Bessega*

■ Preliminarily, the undersigned notes that Claimant's characterization of Dr. Bessega as a "treating psychiatrist" is incorrect, on two grounds. First, because Dr. Bessega only saw Claimant twice (Tr. 645), and therefore did not have an ongoing treatment relationship with Claimant, Dr. Bessega is not a "treating source." *See* 20 C.F.R. §§ 404.1502, 416.902. Dr. Bessega's opinion, therefore, is not entitled to controlling weight. *See* SSR 96–2p (stating that to qualify for controlling weight, "the opinion must come from a 'treating source' as defined in 20 C.F.R. § 404.1502."). Second, not only is Dr. Bessega not a treating source, she is not even a psychiatrist. Rather, she is an internist, not a mental health professional, and her opinion therefore lies outside her area of expertise. *See* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) (providing that ALJ may consider medical source's specialization in weighing medical opinions).

■ Furthermore, Dr. Bessega's questionnaire is internally inconsistent. Although she opined that Claimant's reaching, handling, and fingering limitations were attributable to her "poor concentration" (Tr. 646), she never explained how Claimant's use of her fingers, hands, and arms are related to her concentration. Dr. Bessega's questionnaire is also inconsis-

---

9. In her Response, Claimant asserts that treating physicians indicate that she has poor concentration and memory, that she still hears voices, that her Global functioning assessment is in the 40s and 50s, that she has sad affect and depressed mood, and that she is taking heavy psychological medication. Plaintiff's Response at 2 (DE 21). Claimant, however, ignores evidence of her sporadic compliance with treatments, as well as her physicians' repeated advice the she refrain from abusing alcohol and cocaine. Tr. 422, 531–32. Moreover, as evidence that she continued hearing voices, Claimant references records that predate by four years her alleged onset of disability; therefore, they not only are of limited relevance, but they concern a previously adjudicated period for which Claimant was denied benefits. *See* Tr. 157; *Carmickle,* 533 F.3d at 1165. Furthermore, although Claimant had reported that she heard voices after she went to New York and stopped her medication, she explicitly denied auditory hallucinations when she followed her medication regimen. Tr. 425–26. Claimant also cites to her low Global Assessment of Functioning scores; yet, these tests also predate the relevant period in this case and are therefore not relevant to her current disability application. Tr. 221, 224, 227. Finally, although Claimant suggests that Dr. Herron's opinion is supportive of her claim, his opinion actually contradicts her claim of work-preclusive mental limitations; he opined that Claimant could perform unskilled work, complete a normal work week, and perform at a consistent pace despite her concentration limitations. Tr. 488, 490, 504.

tent with other evidence of record. As the ALJ explained, Claimant had relevant and coherent thought processes, no delusions, was oriented x3, and her memory was not grossly impaired. Tr. 63, 486. Furthermore, when Claimant took her medication she reported improved symptoms. Tr. 62, 518. In addition, Dr. Heffron, a state agency psychologist, opined that Claimant could understand, remember, and carry out simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal work-week without interruption, and perform at a consistent pace. Tr. 488–89. Although Dr. Heffron believed that Claimant had problems with sustained concentration, she also believed that Claimant could nevertheless perform the mental demands of competitive work. Tr. 490. The Regulations make clear that state agency physicians are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i). And the Regulations require that the ALJ consider the findings of state agency physicians as opinion evidence. *Id.*

Moreover, Dr. Bessega's questionnaire warranted discounted weight because it consists entirely of fill-in-the-blank and check-box answers, and it is not accompanied by any thoroughly written report, citation to treatment notes, or substantive explanation. Indeed, the record is devoid of any treatment notes from Dr. Bessega; she merely stated Claimant's diagnosis and reported symptoms, and she checked a box indicating that Claimant had poor to no ability to perform most work-related activities. Tr. 645–47. In the context of disability analysis, such forms are considered "weak evidence at best." *Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir.1993). In addition, Dr. Bessega's reference to Claimant's diagnosis and self-reported symptoms are not determinative of disability; instead, it is the functional limitations from

an impairment that are critical. *See Moore v. Barnhart,* 405 F.3d 1208, 1213 n. 6 (11th Cir.2005) (mere existence of an impairment does not reveal extent to which it limits a claimant's ability to work). And an impairment affecting a claimant's ability to work cannot be established by a questionnaire that merely documents a claimant's statements about subjective complaints, without appropriate objective evidence. 20 C.F.R. §§ 404.1528(a)-(c), 416.928(a)-(c) (signs must be shown by observable facts and medically acceptable clinical diagnostic techniques).

Finally, the undersigned notes that Dr. Bessega failed to address Claimant's ongoing cocaine and alcohol use.

Because Dr. Bessega saw Claimant only two times, completed a conclusory check-box form, failed to support her opinion with acceptable medical evidence, and failed to provide treatment notes, the ALJ properly discounted her opinion.

### b. *Dr. Masters*

■ The ALJ also had good reason to discount Dr. Master's fill-in-the-blank form. Dr. Masters had only seen Claimant twice during the relevant period and had not seen her for three months before completing his form. Tr. 421–22. Dr. Masters did not offer any specific functional limitations in his treatment notes or "mental status report," but merely offered (without explanation) that Claimant could not work because her "functioning [was] currently impaired." Tr. 485–87. Dr. Masters' treatment notes do not document any significant findings; indeed, they document benign mental status findings. Tr. 486, 515–21. And, like Dr. Bessega, Dr. Masters failed to address Claimant's ongoing cocaine and alcohol use. Tr. 531–32, 549, 565.

In addition, Dr. Masters' form was internally inconsistent. While offering that Claimant could not work due to her mental

impairments, he noted that she had relevant and coherent thought processes, normal thought content with no delusions or suicidal ideation, and normal memory that was not grossly impaired; she was also alert, cooperative, and oriented x3. Tr. 486. And although he noted "somewhat impaired" concentration, he did not elaborate. Tr. 486. These benign observations are inconsistent with his ultimate conclusion that Claimant cannot work.

Dr. Masters' form was also inconsistent with other evidence of record. Claimant reported "doing well" while on medication. Tr. 518. In addition, Dr. Heffron opined that Claimant was not significantly limited in her ability to complete a normal workweek, to perform at a consistent pace, and to respond appropriately to changes in the work setting; she also was able to work, notwithstanding any concentration deficits. Tr. 488, 489, 490, 504. To the extent, therefore, that the ALJ needed to account for Claimant's concentration deficit in his RFC, he did so by limiting Claimant to unskilled work. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180–81 (11th Cir.2011) (citation omitted) ("[W]hen medical evidence demonstrates that a claimant can [perform] . . . unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the [claimant] . . . to . . . unskilled work sufficiently accounts for such limitations.").

Furthermore, Dr. Masters' form is not well-supported by acceptable medical evidence; it is unaccompanied by any substantive explanation or objective report. *See Green v. Soc. Sec. Admin.*, 223 Fed. Appx. 915, 922 (11th Cir.2007) (unpublished) ("Good cause to discount a treating physician may arise where a report is not accompanied by objective medical evidence or is wholly conclusory.").

Finally, the undersigned notes that while the ALJ must consider all the evidence, the ALJ is not bound by any physician's opinion regarding RFC or disability. As the Eleventh Circuit has observed, "the ALJ has the ultimate responsibility to assess a claimant's residual functional capacity." *Carson v. Comm'r of Soc. Sec.*, 300 Fed.Appx. 741, 743 (11th Cir.2008) (unpublished). Accordingly, placing undue reliance upon Dr. Masters' check-box form would undermine the ALJ's duty to determine disability.

In sum, the ALJ properly discounted Dr. Masters' opinion as it was not bolstered by the evidence, was conclusory, and was inconsistent with other evidence of record.

### 2. *Vocational Expert Testimony and Reliance on the Guidelines*

Claimant also argues that because she has non-exertional limitations—lack of concentration—the ALJ should not have relied entirely on the Guidelines but should have instead secured the testimony of a vocational expert ("VE"). Plaintiff's Motion at 14 (DE 18); Plaintiff's Response at 3 (DE 21). According to Claimant, "[i]n cases where nonexertional impairments exist such as lack of concentration, the ALJ may use Medical–Vocational Guidelines as a framework to evaluate vocational factors, **but must also introduce evidence, preferably through a [VE's]'s testimony,** of existence of jobs in the national economy that the claimant can perform. That is precisely the issue in this case. A [VE] should have been obtained in this case." Plaintiff's Response at 3 (DE 21) (citations omitted) (bolded in original).

To the extent Claimant is suggesting that an ALJ may never rely entirely upon the Guidelines when there exist non-exertional impairments, but must also secure VE testimony, she is mistaken. The Eleventh Circuit has made clear that the Guidelines may be relied upon, to the exclusion of VE testimony, where the non-

exertional impairments are not so severe as to prevent a full range of employment at a designated work level. *See, e.g., Phillips v. Barnhart,* 357 F.3d 1232, 1243 (11th Cir.2004) ("If the ALJ determines that [the claimant's] non-exertional limitations do not significantly limit her basic work skills," then the ALJ "may rely on the grids."). The propriety of relying upon the Guidelines, therefore, depends not upon the mere presence of non-exertional impairments, but upon the significance of the limitation(s) resulting from those non-exertional impairments:

> [E]xclusive reliance on the grids is not appropriate *either* when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills. This Court has interpreted "significantly limited basic work skills" as limitations that prohibit a claimant from performing "a *wide* range" of work at a given work level. The ALJ must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

*Vuxta v. Comm'r of Social Security,* 194 Fed.Appx. 874, 878 (11th Cir.2006) (unpublished) (citations and internal quotations omitted) (italics in original); *accord Sryock v. Heckler,* 764 F.2d 834, 836 (11th Cir.1985) (non-exertional limitation may cause Guidelines to be inapplicable only where the limitation is severe enough to prevent a wide range of gainful employment at a particular level). And where "nonexertional impairments do not significantly limit ... [Claimant's] basic work

skills, testimony from a [vocational expert] is not required...." *Reilly v. Comm'r of Soc. Sec.,* No. 6:07–cv–2042, 2009 WL 799450, at *19 (M.D.Fla. March 24, 2009). Hence—to paraphrase the Eleventh Circuit—"to the extent [Claimant] argues that the existence of non-exertional limitations precludes the use of the grids, [her] argument is without merit. Instead, the question [the Court] must answer is whether substantial evidence supports the ALJ's findings that [Claimant's] non-exertional impairments do not limit [her] ability to perform [light] work." *Perry v. Astrue,* 280 Fed.Appx. 887, 895 (11th Cir.2008) (unpublished) (citations omitted).

 The undersigned concludes that substantial evidence does support the ALJ's finding that Claimant's non-exertional impairments do not significantly limit her ability to perform light work and, by implication, her ability to perform sedentary work.[10] Although the ALJ found that Claimant does suffer from depression, he properly found that this impairment results in only "moderate" difficulties with regard to concentration, persistence, or pace.[11] Tr. 60 ("With regard to concentration persistence or pace, the claimant has moderate difficulties. The claimant has reported some problems with concentration but memory was not grossly impaired."), Tr. 63 ("Mental status examinations revealed thought processes that were relevant and coherent. There were no delusions or suicidal ideation present. While concentration was noted as somewhat impaired, the claimant was oriented x 3 and memory was not grossly impaired. The claimant was noted as alert and cooperative."). The ALJ accounted for the deficit in Claimant's concentration by limiting

10. The Regulations make clear that "[t]he functional capacity to perform a full range of light work includes the functional capacity to perform sedentary as well as light work." 20 C.F.R. Part 404, Subpt. P, App. 2, § 202.00(a).

11. The ALJ accorded weight to the opinion of Dr. Heffron, who concluded that although Claimant had moderate limitations in concentration for extended periods, she otherwise had the capacity to perform basic work activities. Tr. 490, 504.

her to "light non-stress jobs" or "light level work simple and routine in nature." Tr. 63 ("The undersigned finds that the claimant is capable of light non-stress jobs"; "The claimant is unable to perform more than light level work simple and routine in nature."). The ALJ then found that these additional work limitations— "simple and routine in nature"—"have little or no effect on the occupational base of unskilled light work." Tr. 64. Because unskilled work requires "little or no judgment to do simple duties that can be learned on the job in a short period of time," 20 C.F.R. § 404.1568(a), "a limitation to simple tasks is already contained within the unskilled limitation, and is not a limitation above and beyond that classification." *Vuxta,* 194 Fed.Appx. at 878. Indeed, the Eleventh Circuit more recently stated that "[w]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that [a limitation to] unskilled work sufficiently accounts for such limitations." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1180 (11th Cir.2011).

Furthermore, the Guidelines take "administrative notice ... of the numbers of *unskilled* jobs that exist throughout the national economy at the various functional levels," including the sedentary and light levels. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(b) (2009) (emphasis added). Stated differently, the Guidelines already address, with respect to each level of physical exertion capability, whether persons of various ages and vocational profiles would be disabled if limited to unskilled work. Indeed, the Guidelines take administrative notice of approximately 1600 light and sedentary unskilled occupations, each representing numerous jobs in the national economy. 20 C.F.R. Part 404, Subpt. P, App. 2, § 202.00(a) (stating that "[a]pproximately 1600 separate sedentary and light unskilled occupations can be identified ... each occupation representing numerous jobs in the national economy"). For that reason, the ALJ's application of Guidelines Rules 202.11 and 202.18 presumes that a significant number of unskilled jobs exist at the light (and, by implication, sedentary) exertional level(s) that Claimant can perform. Hence, the ALJ was not required to secure VE testimony concerning the availability of unskilled light and/ or sedentary jobs; it would merely have been duplicative of the Guidelines.

In sum, it is for the ALJ to decide "whether the nonexertional limitations are severe enough to preclude a wide range of employment at a given capacity level...." *Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995). Here, given Claimant's relevant and coherent thought processes, intact memory, and improvement with medication, coupled with Dr. Heffron's opinion that Claimant could perform unskilled work despite her concentration limitations, the ALJ had substantial evidence upon which to find that Claimant's mental impairment does not significantly erode the occupational base for unskilled light and, by implication, sedentary work.[12] *See* SSR

---

12. The undersigned notes that the unskilled sedentary occupational base is substantially eroded only when there is a substantial loss of ability to meet any one of several basic work-related activities on a sustained basis. These mental activities are generally required by competitive, remunerative, unskilled work: understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *See* SSR 96–9p, 1996 WL 374185, at *9 (S.S.A.). Because the record contains no evidence that Claimant had a substantial loss in her ability to understand, remember and carry out simple instructions, to make simple

83–14p (where it is clear that the additional limitation or restriction had very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in the Guidelines would not be affected). Accordingly, the ALJ was not required to secure VE testimony but could instead rely on the Guidelines as a framework for his decision. *See, e.g. Miller v. Astrue*, No. 10–61472 at DE 18 (S.D.Fla. March 22, 2011) (Dube, M.J.) (finding that ALJ properly relied upon Guidelines where ALJ found moderate difficulties in social functioning and concentration, persistence, and pace at step three, limited Claimant to the full range of sedentary work, and applied the Guidelines to conclude that Claimant was not disabled). And in looking to the Guidelines as a framework, the ALJ noted that Claimant was 48 years old and, therefore, a "younger individual" at the time of the alleged disability onset (although she subsequently changed age category to "closely approaching advanced age"), that she has a limited education, that she is able to communicate in English, and that she is capable of performing light level work that is simple and routine in nature. Tr. 63–64. In light of these factors, the ALJ properly determined that "under the framework" of Guidelines Rules 202.11 and 202.18 "a finding of 'not disabled' is therefore appropriate." Tr. 64.

## VI. *RECOMMENDATION*

The ALJ accorded Claimant a full and fair administrative consideration in accordance with the applicable statutes and regulations. He fully considered Claimant's mental impairment, had adequate grounds for discounting the opinions of Dr. Bessega and Dr. Masters, and properly found that Claimant's moderate difficulties in concentration would restrict her to "light non-stress jobs" or "light level work simple and routine in nature," that is, unskilled light work. Further, because the availability of unskilled jobs is already accounted for by the Guidelines, the ALJ was not required to secure VE testimony and could instead rely upon the Guidelines as a framework in concluding that Claimant is not disabled. Accordingly, the undesigned respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 18) be DENIED, that Defendant's Motion for Summary Judgment (DE 19) be GRANTED, and that the Commissioner's decision be AFFIRMED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Kathleen M. Williams, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the district court of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE and SUBMITTED at Fort Lauderdale, Florida this 13th day of February 2012.

---

work-related decisions, to respond appropriately to supervision, coworkers, and usual work situations, or to deal with changes in a routine work setting, her mental limitation did not significantly erode the occupational base for unskilled sedentary work. *See* SSR 96–9p.